IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED
OCT 1 1 2011
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

YORKTOWNE SHOPPING CENTER, )
LLC, )
           )
    Plaintiff, )
           )
v. )    Civil Action No.: 1:10-cv-1333
           )
NATIONAL SURETY CORPORATION )
           )
    Defendant. )

## MEMORANDUM OPINION

In this diversity action, removed from the Fairfax Circuit Court, Yorktowne Shopping

Center, LLC ("Yorktowne" or "Plaintiff") seeks damages from National Surety Corporation

("NSC" or "Defendant") for breach of contract. This case was tried on September 8, 2011, before

the Court sitting without a jury. At the conclusion of trial, Defendant moved for judgment as a

matter of law. The Court has considered the parties' evidence in conjunction with the law, and

this matter is ripe for disposition. For the reasons set forth herein, the Court denies Defendant's

Motion for Judgment as a Matter of Law and finds that Defendant is liable to the Plaintiff in the

amount of $623,616 for breach of contract.

### I.    Findings of Fact

The Court makes the following findings of fact[1]:

Yorktowne owns the Yorktowne Shopping Center (the "Shopping Center") located in Fairfax

County, Virginia. On March 12, 2007, Yorktowne entered a lease agreement (the "Lease") with

---

[1] These facts are taken, in large part, from the Court's June 15, 2011, Order. (Dkt. No. 69). Where the arguments or
evidence at trial mandate alterations to the Court's prior findings, the facts have been adjusted accordingly.

EE Mart FC, LLC ("EE Mart") to run from June 1, 2007, through December 31, 2026. EE Mart, as a lessee, operated a grocery store on the Shopping Center premises.

NSC issued a Fireman's Fund Insurance Policy (the "Policy") to Ziegler Companies, LLC ("Ziegler"), the management agent for Yorktowne. The Policy had an effective period of July 6, 2008, through July 6, 2009. The Policy names Yorktowne as an insured, the Shopping Center as a "covered location," and fire as a "covered cause of loss."

At approximately 10:45 p.m., on January 19, 2009, a fire broke out at the grocery store, causing extensive damage. The fire forced EE Mart to vacate the rental space so it could be restored to its pre-fire condition. During the period of reconstruction, EE Mart repeatedly represented to Yorktowne that it intended to resume its grocery store operations as soon as possible.

On November 25, 2009, Yorktowne tendered the premises to EE Mart to allow EE Mart to enter the space and prepare for resuming business; however, EE Mart did not return to the premises, and Yorktowne terminated the Lease on March 1, 2010.

Yorktowne gave timely and proper notice of the fire and resulting loss to NSC. Two days after the fire, an NSC claims adjuster visited the site and met with Mr. Ziegler, the sole owner of Ziegler Companies, LLC, to discuss the extent of the damage. NSC accepted coverage for the property damage resulting from the fire. The claims adjuster visited the site three or four more times during 2009 to inspect the premises and to observe progress on its reconstruction.

Acting pursuant to the Policy, NSC paid Yorktowne a total of $3,824,022.00, with $624,022.82 in compensation for Yorktowne's loss of business income through the period of restoration.[2] NSC determined the period of restoration to begin on the date of the fire, January

---

[2] The following Policy provision will be referred to as the Business Income Loss Provision:

19, 2009, and to end on January 19, 2010.[3] In March 2010, NSC rejected Yorktowne's claim

under the Policy's Extended Coverage Provision for additional loss of business income. The

Extended Coverage Provision states that NSC:

> [W]ill also pay for the actual loss of Business Income you incur during the period
> that:
>
> (1) Begins on the date property is actually repaired, rebuilt or replaced and
> operations[4] are resumed; and
>
> (2) Ends on the earlier of:
>
> > (a) The date you could restore operations with reasonable speed, to the
> > condition that would have existed if no direct physical loss or damage
> > occurred; or
>
> > (b) 365 consecutive days after the date determined in (1) above.

Policy, AB 92 75 03 01, NSC000129, IV.g.

Because NSC denied Yorktowne's claim, Yorktowne filed suit against NSC in Fairfax

Circuit Court for breach of contract and for bad faith denial of coverage. NSC removed the case

to this Court on November 23, 2010. On July 3, 2011, the Court heard the parties' cross Motions

---

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of
> your **operations** during the **period of restoration**.

Policy, AB 92 75 03 01, NSC000129, IV.g (emphasis in original).

[3] The following Policy provision defines as the Period of Restoration:

> 15. **Period of Restoration** means the period of time that:
>
> > a.   Begins with the date of direct physical loss or damage caused by or resulting from any
> > Covered Cause of Loss at the described premises; and
> >
> > b.   Ends on the date when the property at the described premises should be repaired, rebuilt
> > or replaced with reasonable speed and similar quality.

Policy, AB 90 00 12 93, NSC000087, III.15 (emphasis in original).

[4] The Policy defines the bolded term **operations** to mean tenantability. *See* Policy, AB 90 00 12 93, NSC000087,
III.14 ("**Operations**" means [t]he tenantability of the described premises, if coverage for Business Income includes
rents."). In its Memorandum Opinion following the cross Motions for Summary Judgment, the Court determined
that the unbolded term "operations" as used in part (2)(a) above means "rental of the insured premises." *See*
discussion *infra* note 9.

for Summary Judgment. The Court denied Yorktowne's Motion for Summary Judgment and granted in part and denied in part NSC's Motion. Following the hearing, the Court's Order specified that only the issue concerning Yorktowne's ability to recover under the Policy's Extended Coverage Provision remained for trial. Specifically, the Court found that factual determinations must be made regarding "*when* Yorktowne could have restored operations with reasonable speed," and "the applicability of NSC's affirmative defenses."

On September 8, 2011, the parties presented evidence on these discrete issues before this Court at a bench trial. At the close of evidence, NSC moved for judgment as a matter of law. Yorktowne opposes NSC's Motion and seeks lost rental income under the Extended Coverage Provision for January 19, 2010, through January 19, 2011, in the amount of $623,616.

## II.     Jurisdiction & Venue

Yorktowne is a Virginia limited liability company with its principal place of business in Great Falls, Virginia. NSC is an Illinois corporation with its principal place of business in California. The amount in controversy exceeds $75,000 exclusive of interests and costs. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

A substantial part of the events giving rise to this claim occurred within the Eastern District of Virginia. Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## III.     Judgment as a Matter of Law

At trial, following the presentation of the evidence, NSC moved for judgment as a matter of law on three bases. First, NSC claims that recovery should be denied because Yorktowne had a contractually bound tenant at the commencement of the Extended Coverage period, and as a result, Yorktowne had resumed operations. Second, NSC claims that Yorktowne is barred from

4

recovery under the Policy's "Business Income Exclusion,"[5] because it cancelled the Lease agreement with EE Mart. Finally, NSC claims that Yorktowne 's recovery should be barred because it failed to comply with the Policy's requirement to resume operations as quickly as possible.[6] For the reasons that follow, Defendant's Motion is denied.

A court may grant judgment as a matter of law when "a party has been fully heard on an issue" and the court finds that there would be no "legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50. "Judgment as a matter of law is proper when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment." *Price v. City of Charlotte, N.C.*, 93 F.3d 1241, 1249 (4th Cir. 1996).

---

[5] The following Policy provision will be referred to as the Business Income Exclusion:

We will not pay for:

   (1)  Any increase of Business Income loss caused by or resulting from:

      (a) Delay in rebuilding, repairing or replacing the property or resuming **operations** due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

      (b) Suspension, lapse or cancellation of any license lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of **operations**, we will cover such loss that affects your Business Income during the **period of restoration**.

   (2)  Any other consequential loss.

Policy, AB 92 75 03 01, NSC000130, IV.g.

[6] The following Policy provision will be referred to as the Mitigation Provision:

   E. **Property Loss Conditions**

      3. Duties in the Event of Loss or Damage

      a. You must see that the following are done in the event of loss or damage to Covered Property:

         (9) Resume all or part of your **operations** as quickly as possible.

Policy, AB 90 00 12 93, NSC000069, E.3.a.(9).

### a. **Yorktowne had not resumed operations at the commencement of the Extended Coverage period.**

NSC claims that Yorktowne is barred from recovery under the Extended Coverage Provision because at the conclusion of the period of restoration, EE Mart was contractually bound as Yorktowne's tenant. According to the Policy, the Extended Coverage period ends on the "date you could restore operations with reasonable speed, to the condition that would have existed if no direct physical loss or damage occurred." *See* Extended Coverage Provision, Policy, AB 92 75 03 01, NSC000129. Yorktowne had a contractually bound tenant at the conclusion of the period of restoration. Thus, NSC claims, Yorktowne had resumed operations.

Before the destruction caused by the fire, Yorktowne leased its Shopping Center to a rent paying tenant. There is no indication by either party that, absent the fire, EE Mart intended to discontinue its obligations under the Lease. At the conclusion of the restoration period, however, EE Mart refused to reenter and resume making rent payments. It is reasonable to assume that but for the physical loss or damage, Yorktowne would have continued to collect rent from EE Mart.

Because Yorktowne did not have a rent paying tenant at the end of the restoration period, Yorktowne had not resumed operations to the condition that would have existed prior to the fire. As a result, the Extended Coverage period did not end at the conclusion of the restoration period. Even though EE Mart was contractually obligated to make rent payments, it refused to do so. Accordingly, Yorktowne was not in the same position it would have been had no damage occurred.

Instead, the Extended Coverage period terminated when Yorktowne could have secured a rent paying tenant with reasonable speed. It is clear that Yorktowne made every effort to restore EE Mart as that tenant. Yorktowne promptly sought to rehabilitate the premises for EE Mart's reentry; Yorktowne repeatedly made requests for fixture plans from EE Mart; Yorktowne

6

quickly engaged a contractor for reconstruction of the rental space; Yorktowne provided frequent updates to EE Mart regarding the reconstruction progress; when it appeared that EE Mart might not comply with its contractual Lease obligations, Yorktowne filed a lawsuit against EE Mart; when it appeared that the law suit would prevent EE Mart's reentry, Yorktowne offered to sign a settlement agreement stating that Yorktowne would dismiss all claims against EE Mart upon EE Mart's resumption of operations and payment of rent. These efforts fell on deaf ears. EE Mart was ultimately unwilling to resume its contractual obligations, but because Yorktowne acted reasonably in seeking EE Mart's reentry, EE Mart's actions do not bar Yorktowne's ability to recover under the Policy.

### b.  Yorktowne is not barred from recovery because it cancelled its Lease with EE Mart.

NSC also claims that it is entitled to judgment as a matter of law because the Business Income Exclusion in the Policy instructs that NSC will not pay for "any *increase* of Business Income loss caused by ... cancellation of any ... lease or contract." *See supra* note 5 (emphasis added). NSC maintains that when Yorktowne terminated the Lease with EE Mart, Yorktowne relinquished its legal right to recover under the breached Lease contract. This action ultimately increased Yorktowne's losses, and the Business Income Exclusion bars recovery.

NSC's argument fails. By its terms, the Business Income Exclusion only prevents recovery when the cancellation of a contract results in *increased* loss. In this instance, terminating the Lease did not affect Yorktowne's ability to recover past due or future unpaid rent payments from EE Mart. When Yorktowne terminated the Lease on March 1, 2010, EE Mart's leasehold interest in the Shopping Center ended; however, as provided in the Lease, Yorktowne retained its right to collect payment.

Yorktowne had a right to collect unpaid rent from EE Mart both before and after Yorktowne cancelled the Lease. As a result, the amount of loss remained static. In fact, cancelling the Lease with EE Mart made it possible for Yorktowne to relet the premises to an alternative, rent paying tenant—potentially reducing future loss. Consequently, the Business Income Exclusion does not bar Yorktowne's ability to recover under the Policy's Extended Coverage Provision.

### c. Yorktowne resumed operations as quickly as possible.

Finally, NSC claims that Yorktowne failed to resume operations as quickly as possible, as required by the Policy[7] and by common law mitigation principles. *See Hannah v. Dusch*, 154 Va. 356, 377, 153 S.E. 824, 831 (1930) (explaining an injured party's duty to reduce the degree of injury).

In this instance, there is overwhelming evidence that Yorktowne made sufficient efforts to both restore and relet the Shopping Center. As discussed *supra*, Yorktowne consistently made efforts to communicate with EE Mart and rehabilitate the Shopping Center as promptly as possible. Not only did Yorktowne seek EE Mart's reentry, but as early as December 2009, when it appeared possible that EE Mart might not reenter, Yorktowne began considering other options. Yorktowne posted signs on the premises, advertised to commercial brokers, negotiated with several prospective tenants, requested financial statements to determine prospective tenants' ability to operate,  and eventually found a new tenant to commence operations beginning in November 2011.

For these reasons, neither the Policy nor any duties arising under common law prevent Yorktowne from recovering under the Policy's Extended Coverage Provision.

---

[7] The parties dispute whether the Policy required Yorktowne to restore *tenantability* as promptly as possible or to *rent the premises* as quickly as possible. The dispute arises because the Policy's definition of "operations" is ambiguous. The import of this determination matters only in resolving who bears the burden of proof as to whether Yorktowne's efforts to relet the premises were sufficient. Because the Court finds that there is overwhelming evidence indicating that Yorktowne made sufficient efforts to promptly relet the Shopping Center, the burden in this case is not determinative, and interpreting the nuances of the Policy is unnecessary.

Because each of NSC's arguments fail to establish a sufficient basis to award judgment as a matter of law, *see* Fed. R. Civ. P. 50, NSC's Motion is denied.

## IV. Breach of Contract

The remaining factual dispute before the Court concerns whether NSC breached its contractual obligation, as defined in the Policy, to provide coverage to Yorktowne for the Extended Coverage period. The weight of the evidence at trial establishes that NSC failed to comply with its contractual obligations.

A claim for breach of contract requires a showing that "(1) the defendant owed [the plaintiff] a legal obligation, (2) the defendant violated that obligation, and, (3) as a consequence, injury or damage inured to the plaintiff." *Frank Brunckhorst CO., L.L.C. v. Coastal Atlantic, Inc.*, 542 F. Supp. 2d 452, 457 (E.D. Va. 2008).

In the present case, NSC has a legally binding contractual obligation to Yorktowne under the insurance Policy. The Policy requires NSC to make payments under the Extended Coverage Provision when certain conditions are met. According to this Court's prior Memorandum Opinion, Yorktowne is entitled to recover under this provision, subject to only two conditions. First, Yorktowne must have resumed operations as quickly as possible. Second, Yorktowne's recovery cannot be barred by any of NSC's affirmative defenses. For the reasons discussed *supra* in Part III, neither of these conditions limit Yorktowne's recovery under the Extended Coverage Provision. Because NSC failed to comply with the Extended Coverage Provision without justifiable cause, Yorktowne was denied its right to recover.

The evidence clearly establishes that NSC breached its contractual Policy with Yorktowne.

## V.    Damages

The parties disagree on, *inter alia*, Yorktowne's permissible recovery under the Extended

Coverage Provision. The disagreement hinges largely on two issues: (a) the time period over

which Yorktowne is entitled to insurance payments and (b) the amount of the monthly rental

payments due.

### a.  Period of Recovery

#### i.  The Extended Coverage period of recovery commences on January 19, 2010.

NSC claims that the recovery period under the Policy begins on November 25, 2010—the

date the premises were tendered to EE Mart. Yorktowne proposes that the recovery period begins

on January 19, 2010, at the end of the period of restoration.

The Extended Coverage Provision provides that Yorktowne is entitled to recover from the

period beginning "on the date the property is actually repaired, rebuilt or replaced and *operations*

*are resumed*." *See* Extended Coverage Provision, Policy, AB 92 75 03 01, NSC000129

(emphasis added).

At trial, Plaintiff's counsel read into evidence deposition testimony from Jean Hargrove, a

Regional General Adjuster for NSC, who was assigned as the primary agent in the Yorktowne

matter. In relevant part, the testimony revealed that Hargrove identified the Policy defined period

of restoration as commencing on January 19, 2009, and ending on January 19, 2010. Hargrove's

deposition further declared that January 19, 2010, was the date that Yorktowne resumed

operations.[8]

---

[8] In the Court's Memorandum Opinion following the cross Motions for Summary Judgment, the Court emphasized that the relevant time period for the Extended Coverage Provision commenced on the date Yorktowne resumed operations. The Court's opinion on this matter remains unchanged. However, in light of the Jean Hargrove deposition testimony read in to evidence at trial, the Court, as a finder of fact, discerns the relevant commencement date for the Extended Coverage Provision must be January 19, 2010.

Case 1:10-cv-01333-LO-TCB Document 94 Filed 10/11/11 Page 11 of 14 PageID# 2146

The Extended Coverage Provision says that Yorktowne is entitled to recover for the period

commencing on the date that operations resume. According to NSC's agent, this date was

January 19, 2010.

### ii. The Extended Coverage period ends on January 19, 2011.

NSC maintains its argument that the Business Income Exclusion prevents Yorktowne from

recovering after March 1, 2010—the date on which Yorktowne cancelled the Lease agreement

with EE Mart. For reasons discussed previously, terminating the Lease does not bar Yorktowne's

recovery. *See* discussion *supra* Part III.b.

The Policy says that the Extended Coverage period ends on the earlier of (1) the date

Yorktowne could have rented the premises[9] with reasonable speed or (2) 365 days after the

Extended Coverage period commenced. *See* Extended Coverage Provision, Policy, AB 92 75 03

01, NSC000129.

---

It is not clearly discernible why operations were deemed to have resumed on January 19, 2010. Of course, the parties agree that Yorktowne tendered the premises to EE Mart on November 25, 2009. The Policy defines the restoration period as ending on the date when the property is "repaired, rebuilt or replaced with reasonable speed and similar quality." *See supra* note 3. It is possible, then, that the restoration period might have ended when Yorktowne tendered the premises on November 25, 2009.

Hargrove, however, indicated that she believed EE Mart was given a period of time to prepare for reopening. In theory, this period would have permitted EE Mart to prepare the premises for the opening of business, and EE Mart might have been excused from making rent payments until it completed these final restorative measures. As indicated in the Hargrove deposition, this could be the reason why NSC paid for a period of restoration that extended beyond the date when Yorktowne tendered the property to EE Mart—November 25, 2009.

The relevant question, however, is not when the restoration period ended, but rather, when operations resumed. *See* Extended Coverage Provision, Policy, AB 92 75 03 01, NSC000129 ("We will also pay for ... loss ... during the period that ... [b]egins on the date ... operations are resumed."). According to the Hargrove deposition, it appears that NSC determined that restoration period ended and operations resumed both on January 19, 2010.

In any event, NSC determined that operations resumed on January 19, 2010. The terminology in the Extended Coverage Provision is clear. The period begins on the date operations resume.

[9] The Court substitutes the definition "rented the premises" for the word "operations" as it originally appears in the Policy. As explained in the Court's Memorandum Order following the Motions for Summary Judgment, the Court previously held that the Policy was ambiguous as to the proper meaning of the word "operations" in the Extended Coverage Provision. Applying the Commonwealth of Virginia's tenants of contract construction, the Court found that the most sensible reading of "operations" as it appears in the referenced provision is "rental of the insured premises." The substitution has been made in the Opinion above for the sake of clarity.

11

As previously detailed, Yorktowne made sufficient efforts to restore and relet the Shopping Center during the relevant time period, but Yorktowne was unable to relet the premises during the 365 day period following the commencement of the Extended Coverage period. In accordance with subsection (2) of the Policy, Yorktowne is entitled to a full 365 day recovery period, ending on January 19, 2011.

### b.  Amount of Recovery

NSC claims that Yorktowne failed to meet its burden of proof in showing that Yorktowne suffered business income losses in the amount of $51,968 per month.

According to the Lease, total monthly rent in 2010 was $51,968. The Lease states that this figure is comprised of Fixed Rent in the amount of $37,522, plus an estimated prepayment for EE Mart's share of Real Estate Taxes and Common Area Costs. Typically, at the close of each calendar year, Yorktowne would compute EE Mart's actual share of Real Estate Taxes and Common Area Costs. If EE Mart's monthly payment was deficient, EE Mart was required to pay Yorktowne additional amounts owed. If EE Mart had overpaid, Yorktowne would reimburse EE Mart. NSC claims that the insurance Policy covers actual, not estimated losses, and that the amounts Yorktowne requested were merely estimates, not actual figures.

The Extended Coverage Provision allows for the recovery of actual business income loss. Real Estate Taxes and Common Area Costs, although estimates at the outset, ultimately constitute a portion of EE Mart's contractual obligation to Yorktowne. The estimated amounts reflect Yorktowne's standard practice for calculating the actual business income that EE Mart would have been required to pay to Yorktowne. At trial, Mr. Ziegler testified that the estimated values for Real Estate Taxes and Common Area Costs were "usually pretty accurate." Moreover, Yorktowne calculated the lost business income that it requests in this instance in the same

12

manner that it calculated the lost business income for the prior payments NSC made to Yorktowne during the restoration period. NSC never disputed the manner in which Yorktowne calculated the lost business income for the restoration period, and aside from identifying these figures as estimates, NSC provides no other evidence showing that these estimates are inaccurate or unfairly calculated.

Yorktowne has requested lost income for the amount it would have been entitled to recover from EE Mart. The evidence in this case weighs in favor of Yorktowne's ability to recover, and Yorktowne has satisfied its burden of showing that it is entitled to the full $51,968 monthly payment for a period of twelve months. Yorktowne is entitled to a total recovery of $623,616.

### c. Setoff

Finally, NSC claims that it is entitled to offset any amount it owes to Yorktowne based on the $44,000 that Yorktowne recovered from the EE Mart Lease guarantors as well as a $198,000 security deposit that Yorktowne held under the Lease.

Yorktowne claims that the identified funds were intended to compensate Yorktowne for other losses in addition to rent. For example, Yorktowne claims that the judgment was also meant to reimburse Yorktowne for the expenses it incurred in removing EE Mart's debris from the Shopping Center and for the funds Yorktowne used to pay EE Mart's water, power, and gas bills.[10]

"It is elementary that one who asserts a setoff must prove his claim." *Broaddus v. Gresham*, 181 Va. 725, 735, 26 S.E.2d 33, 37 (1943). NSC has provided insufficient evidence to the Court

---

[10] Yorktowne also argues that NSC failed to raise setoff as an affirmative defense in its Answer and thus waived the defense. In its Answer, NSC asserts that "[t]he claims set forth in Plaintiff's Complaint are barred, in whole or in part, by Plaintiff's recovery from or rights against third-parties that may have caused the alleged loss." (Ans. ¶ 38). Although this response seems to be referring to NSC's argument that Yorktowne's recovery should be limited to a claim for breach of contract against EE Mart, a broader reading could lead to the inference that the defendant is claiming setoff as an affirmative defense. Deciphering the meaning NSC intended in its pleading is unnecessary, however, because NSC failed to otherwise show that it is entitled to use setoff as a defense.

indicating to which portions, if any, of the judgment or security deposit it is entitled.

Accordingly, NSC may not use setoff as a defense.

## VI.  Conclusion

For the aforementioned reasons, Defendant's Motion for Judgment as a Matter of Law is denied. Defendant breached the insurance Policy contract by failing to meet its coverage obligations, and judgment is entered for the Plaintiff in the amount of $623,616.00.

ORDER to follow.

Oct 11, 2011

_____/s/_____
Liam O'Grady
United States District Judge